**J. R. YOUNGDALE CONSTRUCTION CO., INC.**

v.

**The UNITED STATES.**

No. 92–73.

United States Court of Claims.

June 16, 1976.

O. P. Easterwood, Jr., Washington, D. C., atty. of record, for plaintiff; McNutt, Dudley, Easterwood & Losch, Washington, D. C., of counsel.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's request, filed December 17, 1975, for review by the court of the recommended decision, filed December 1, 1975, by Senior Trial Judge Mastin G. White, pursuant to Rule 166(c) on plaintiff's motion for summary judgment and defendant's supplement to its cross-motion for summary judgment, having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. Accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and the petition is dismissed.

## OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge:

This case involves attempts—all unsuccessful thus far—by the plaintiff to obtain a decision, either by the Armed Services Board of Contract Appeals ("ASBCA") or by this court, on the merits of the plaintiff's claim for additional compensation under a contract with the Navy Department.

The plaintiff's initial appeal to the ASBCA from an unfavorable determination by the contracting officer on the plaintiff's claim was dismissed by the ASBCA in a decision dated February 28, 1973 (ASBCA No. 18090). The basis for the 1973 decision was that the appeal had been mailed by the plaintiff 6 days after the expiration of the 30-day period prescribed in the "disputes" provision of the contract for the taking of appeals by the contractor from adverse determinations by the contracting officer. In this connection, the ASBCA stated in its decision that it was "without authority to decide untimely appeals on the merits."

The plaintiff thereafter filed its petition in this court on March 14, 1973, and asked the court to review the action of the ASBCA under the provisions of the Wunderlich Act (41 U.S.C. §§ 321, 322). In a decision dated October 23, 1974 (205 Ct.Cl. 578, 504 F.2d 1124), on a motion by the plaintiff and a cross-motion by the defendant for summary judgment, the court held that the ASBCA had the power, under proper circumstances, to waive the tardy mailing of the plaintiff's appeal. Accordingly, the court denied the motions for summary judgment without prejudice and remanded the case to the ASBCA "for a determination, in the first instance, as to whether a waiver of the plaintiff's 6-day delay in mailing the appeal is warranted, and, if such waiver is granted, for a determination on the merits of the plaintiff's * * * claim."

The ASBCA's decision on the remand was dated February 24, 1975 (ASBCA No. 18090). It was the ASBCA's conclusion that "appellant [plaintiff here] has not shown any sound ground for a discretionary waiver of its failure to file a timely appeal."

Accordingly, the appeal was dismissed by the ASBCA a second time.

The case is again before the court on a renewal by the plaintiff and the defendant of their motion and cross-motion, respectively, for summary judgment. In its motion for summary judgment, the plaintiff asks the court, first, to overrule the ASBCA's action in refusing to waive the 6-day delay in taking the appeal from the contracting officer's determination, and, second, to order the holding of a trial *de novo* in the court's trial division on the merits of the plaintiff's claim, since (according to the plaintiff) the administrative procedure has proved to be inadequate.

The factual information that was before the ASBCA on the remand will be summarized in subsequent paragraphs of this opinion.

The contract that is involved in the litigation called for the construction by the plaintiff for the Navy Department of enlisted men's barracks at the Naval Auxiliary Air Station, Fallon, Nevada. The plaintiff was to be paid a fixed price of $1,504,500 for the work. The contract contained in general provision 6 the standard provision relative to disputes, which stated in part as follows:

(a) * * * [A]ny dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. * * *

During the course of the performance of the work under the contract, a controversy arose between the plaintiff and the Navy Department's resident officer on the job as to whether, as proposed by the plaintiff on January 29, 1971, it was permissible under the contract specifications to use "a naturalite material" as aggregate in the produc-

tion of the lightweight concrete that was needed for the project. On April 8, 1971, the resident officer disapproved the plaintiff's proposal on the ground that natural aggregate would not comply with the contract specifications; and he directed the plaintiff to use man-made aggregate instead of natural aggregate in the production of lightweight concrete.

The plaintiff complied under protest with the resident officer's directive that man-made aggregate must be used in the production of lightweight concrete; and the plaintiff informed the resident officer in a telegram that "All costs incurred as a result of Governments action * * * will be submitted as soon as same are ascertainable * * * ."

In a letter which the plaintiff wrote to the resident officer on April 28, 1971, the plaintiff requested that a change order be issued to cover the additional expense allegedly incurred because of the requirement that man-made aggregate be used for lightweight concrete, and the plaintiff also requested a 30-day extension of the time prescribed in the contract for the completion of the work. Accompanying this letter was a detailed statement of the additional costs claimed by the plaintiff, totalling $20,728.

On August 26, 1971, and again on November 19, 1971, the plaintiff wrote the resident officer and inquired about the status of the plaintiff's claim. The letter of November 19 noted that no response to the plaintiff's earlier letters had been received, and that the claim had been pending for 7 months.

On December 8, 1971, the Officer in Charge of Construction, Western Division, Naval Facilities Engineering Command, at San Bruno, California, wrote to the plaintiff and denied the plaintiff's claim for additional compensation in the amount of $20,728, and also the claim for a 30-day time extension. The letter discussed the claim in detail, stated that the decision contained in the letter was "the decision of the Officer in Charge of Construction and may be referred to the Contracting Officer for final decision in accordance with the Dis-

putes Clause of the contract," and further stated that any request for a final decision should be sent through the San Bruno office to the Commander of the Naval Facilities Engineering Command in Washington, D. C.

On December 29, 1971, the plaintiff wrote a letter to the Commander of the Naval Facilities Engineering Command in Washington, D. C., requesting reconsideration of the claim which the plaintiff had submitted on April 28, 1971, "together with the supplemental costs attached hereto." The supplemental claim was for an additional amount of $15,493 and covered winter protection expenses allegedly resulting from the Government's delay in acting on the plaintiff's proposal of January 29, 1971, for the use of natural aggregate in the production of lightweight concrete. The letter of December 29, 1971, and attached supplementary claim were mailed to the Navy's San Bruno office for transmission to Washington, D. C., in accordance with the instructions previously received by the plaintiff from the San Bruno office.

On March 1, 1972, the plaintiff wrote another letter to the Commander of the Naval Facilities Engineering Command in Washington, D. C., inquiring about the status of the plaintiff's claim. This letter was also mailed to the Navy's San Bruno office for transmission to Washington, D. C.

By means of a letter dated March 14, 1972, the Navy's San Bruno office informed the plaintiff that its claim had been forwarded to Washington, D. C., for a decision by the contracting officer.

In the summer of 1972, the plaintiff and the Navy agreed on a settlement of the plaintiff's supplemental claim for delay expenses, which had been submitted with the plaintiff's letter of December 29, 1971. Under the settlement, the plaintiff received $11,935 and was allowed a 26-day time extension. It was understood by the parties that this settlement of the delay claim did not affect the plaintiff's aggregate claim.

In a letter which the plaintiff wrote to the Navy's San Bruno office on August 29, 1972, the plaintiff reminded the Navy that its aggregate claim was still pending, despite the settlement of the plaintiff's supplemental claim for delay expenses. The final paragraph of the letter dated August 29, 1972, stated that "we therefore respectfully request a formal decision of the Contracting Officer so as to allow this company to appeal to higher authority."

On November 21, 1972, the contracting officer (who was the Assistant Commander for Contracts of the Naval Facilities Engineering Command in Washington, D. C.) rendered a "final decision" denying the plaintiff's aggregate claim. A copy of this decision was mailed to the plaintiff and it was received by a receptionist in the plaintiff's San Diego, California, office on Monday, November 27, 1972.

Later in the week of November 27, 1972, the copy of the contracting officer's "final decision" was brought to the attention of Jack W. Brannen, the plaintiff's vice president in charge of contract matters. Immediately after reading the decision, Mr. Brannen called someone at the Navy's San Bruno office on the telephone (the identity of the individual called is not disclosed by the record) and informed him orally that the plaintiff was appealing from the adverse decision rendered by the contracting officer on the plaintiff's aggregate claim.

Sometime in the latter part of December 1972, Mr. Brannen in California wrote a letter to the plaintiff's counsel in Washington, D. C., transmitting the necessary papers for the preparation of an appeal from the contracting officer's decision of November 21, 1972, and instructing counsel to prepare such an appeal. The record does not disclose the exact date on which Mr. Brannen's letter was mailed or when it was received by counsel in Washington, D. C.

A written appeal from the contracting officer's decision was prepared by plaintiff's counsel, and the appeal was mailed on January 2, 1973. That was 6 days after the expiration of the 30-day period prescribed in general provision 6 of the contract for the mailing of such appeal.

On the basis of the factual information previously summarized in this opinion, the

ASBCA decided that the plaintiff had "not shown any sound ground for a discretionary waiver of its failure to file a timely appeal"; and the ASBCA dismissed the appeal.

In view of the circumstances (1) that the Navy Department delayed for approximately 19 months before it furnished the plaintiff an appealable decision by the contracting officer on the plaintiff's claim of April 28, 1971, (2) that the Navy Department was informed by the plaintiff in writing as early as August 29, 1972, that the plaintiff intended to appeal from the decision of the contracting officer, if adverse when rendered, (3) that the plaintiff, promptly after receiving the contracting officer's decision, orally informed the Navy Department that the plaintiff was appealing from such decision, and (4) that no prejudice to the Navy Department resulting from the plaintiff's delay in taking the appeal has been shown, it could reasonably have been concluded by the ASBCA that a waiver of the plaintiff's relatively slight 6-day delay in mailing the appeal would be justified.

On the other hand, the plaintiff did not present to the ASBCA any persuasive reason why the plaintiff's vice president in charge of contract matters delayed until almost the end—and, indeed, perhaps until after the end—of the 30-day period prescribed by the contract for the taking of an appeal before he mailed the necessary papers and instructions from California to plaintiff's counsel in Washington, D. C. In the absence of some justifiable excuse—and the mere fact that the Christmas holidays occurred near the end of the 30-day period is insufficient for this purpose—it would be reasonable to infer that the delay was attributable to carelessness on the part of the plaintiff's vice president. In view of this, it certainly cannot be concluded that the ASBCA was *required* to exercise its discretion in favor of a waiver of the 6-day delay that occurred in the taking of the plaintiff's appeal.

 Since the ASBCA's power to waive the 6-day delay was discretionary, the court's standard in reviewing the ASBCA's decision on the matter is not whether the court itself, upon a consideration of the pertinent facts, believes that a waiver of the 6-day delay would be justified. Rather, the proper standard is whether the ASBCA abused its discretionary power by exercising such power in an arbitrary manner.

Inasmuch as the decision to waive or not to waive the 6-day delay could reasonably have gone either way under the facts presented to the ASBCA, there was no abuse of discretion on the part of the ASBCA in denying the request for a waiver.

CONCLUSION

Accordingly, the plaintiff's motion for summary judgment is denied, the defendant's cross-motion for summary judgment is allowed, and the petition is dismissed.